UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DESIREE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-1168-G |
| | ) | |
| DEPARTMENT OF CORRECTIONS | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Now before the Court is a Motion to Dismiss (Doc. No. 15) filed by Defendants

Department of Corrections (herein referred to as the Oklahoma Department of Corrections

or "ODOC"), David Lothen, Andi Wade, and James Hunter, seeking dismissal of Plaintiff

Desiree Moore's Amended Complaint (Doc. No. 3) pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6). Plaintiff did not file a response to the Motion to Dismiss.

In light of Plaintiff's pro se status, however, the Court has considered the arguments raised

in Plaintiff's Motion to Strike (Doc. No. 16), Supplement (Doc. No. 18), and Reply (Doc.

No. 21), to the extent these filings contest dismissal.

I.    *Plaintiff's Allegations*

Plaintiff alleges as follows:

Plaintiff was injured while performing her job duties working for ODOC at the

Lexington Correctional Center ("LCC") on October 4, 2022. *See* Am. Compl. at 2, 4. As

a result of the October 4, 2022 injury, she received treatment and underwent surgery. *Id.*

at 4. Plaintiff then "signed a[] work restriction accommodation" that was also signed by

the LCC warden.  *See id.*  Plaintiff informed her supervisor, Laura Bradley, that Plaintiff "was not allowed to lift, push or pull anything" exceeding five pounds.  *Id.* (alleging that Plaintiff was "[m]edically required to be on restrictions").  Ms. Bradley stated that Plaintiff "would have to do whatever needed to be done."  *Id.*  Plaintiff was told to call for help when needed.  *Id.*

In August 2023, Plaintiff was promoted to Correctional Case Manager I, which was an office position in Unit 5.  *Id.* at 5.  Plaintiff was told that in her new role she would "have to supervise in other areas of the prison."  *Id.*  Plaintiff "had the same accommodation paperwork" and informed Jesse Smith, the unit manager and her acting supervisor, that she would do as she was told "as long as it wasn't against [her] restrictions."  *Id.*

On November 12, 2023, Plaintiff was assigned to be the "visitation supervisor." *Id.* Plaintiff was in charge of verifying visitors, searching visitors and their property, conducting walkthroughs of the visitation area and playground, and checking for contraband.  *Id.*  Plaintiff was the only employee at the "front desk and security post," but she was not provided with a radio or other "security equipment."  *Id.*

That day, Plaintiff was monitoring the visitation area and observed contraband being passed between the inmate and a visitor.  *Id.*  In accordance with ODOC policy, Plaintiff terminated the visit and asked the inmate and visitor to leave the room.  *Id.*  The inmate "pushed [Plaintiff] with his hand on [her] chest and then slammed [her] body against a metal door frame."  *Id.*  Plaintiff went to a safe area and was separated from the inmate by a closed door, but then an officer in a control room opened the door and let the inmate out. *Id.*  When the inmate "charged toward" Plaintiff with "his fist raised," she shouted "get

2

back," pushed the inmate with both hands back through the door, and told the control room officer to close the door and not open it again.  *Id.*

The acting warden, Mike Rogers, later told Plaintiff that she had acted according to her training based on review of videos of the incident.  *See id.*  Plaintiff continued to supervise the visitation area after the incident.  *Id.*  Plaintiff's supervisor Jesse Smith told Plaintiff, however, that "he would get [Plaintiff] terminated for getting injured" during the November 12, 2023 incident.  *Id.*  Plaintiff reported Smith's statement "to the head of HR." *Id.*; *see also id.* Ex. 1 (Doc. No. 3-1) at 14.

After that, Plaintiff's "duties began to change."  Am. Compl. at 5.  Plaintiff was told by Tasha Parker, the deputy warden, that she needed to be put in the laundry area more often than were other employees in her same position.  *Id.*  Plaintiff informed Parker of the medical restrictions, but Parker told Plaintiff to do as she was told or Plaintiff "would not have a job."  *Id.*

On February 2, 2024, Smith told Plaintiff in a phone call that Plaintiff would be transferred to Unit 6 because another case manager "was going out for surgery for several months" and the transfer would allow for both units to have at least one case manager.  *Id.* Plaintiff was the newest case manager at the time of the transfer.  *Id.*  Plaintiff moved to Unit 6 on February 5, 2024, and her new supervisor was Mandy Perry, the unit manager. *Id.*  Plaintiff's job duties were described to Plaintiff as "[j]ust do what[]ever [Perry] told [Plaintiff] to do."  *Id.*  Plaintiff informed human resources several times "about having to move/lift items above [her] weight restrictions."  *Id.*  Charles Stephen, another worker in

3

Plaintiff's office, "yelled at" her, which she documented in reports that she submitted to Defendant Wade, the head of human resources. *Id.*

Plaintiff met with an Officer of the Inspector General investigator on February 7, 2024, about the November 12, 2023 altercation. *Id.* at 6. Plaintiff was not aware of any investigation into the incident prior to the meeting. *Id.* Plaintiff was informed that two employees had stated that Plaintiff had "touched the visitor and not the inmate." *Id.* Plaintiff informed the investigator that she had submitted an incident report to her supervisor on the same day as the incident and had previously been told by the acting warden that she had followed "proper procedures." *Id.* The investigator repeatedly told Plaintiff that the inmate and the visitor had "had told the same story." *Id.* Plaintiff repeated that her own statement had been the same since the date of the incident and stated that she "was more concerned with why [she] was put in danger," that she pushed the inmate in self defense, and that the video footage "proved that nothing happened." *Id.* Plaintiff asked whether the inmate's email or phone calls had been checked for "collusion." *Id.*

Plaintiff experienced "nothing but harassment" from her unit coworkers over "[t]he next couple of months." *Id.* Plaintiff sent emails to Defendant Lothen, the LCC warden, seeking to meet about "issues" Plaintiff had with her supervisor, Perry. *Id.* Plaintiff reported to Defendant Wade "the constant abuse" Plaintiff experienced from Stephens and Perry and was told a meeting would be set up, but no meeting was held. *Id.*

Plaintiff reported the same issues to a new supervisor, LaDanna Warrior. *Id.* Warrior, in a meeting attended by Defendant Wade, "asked about [Plaintiff's] anxiety" rather than discussing the allegations, and Defendant Wade "did nothing." *Id.*

On June 17, 2024, Stephens "yelled at" Plaintiff while she stood in her office, and Perry "just ignored him." *Id.* Plaintiff told Stephens that she was "tired of his attitude and [she] was not going to take his abuse anymore." *Id.* Later the same day, Defendant Wade emailed Plaintiff and told her to come to a meeting in Defendant Lothen's office. *Id.* Plaintiff was "terminated for a Use-of-Force" that day. *Id.*

Plaintiff had surgery on August 30, 2024, "to correct the issue [for which she had been] under Medical restrictions . . . since October 4th, 2022." *Id.* Plaintiff has been "in constant pain "[d]ue to that injury." *Id.*

In the Amended Complaint, Plaintiff alleges multiple violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. *See* Am. Compl. at 3. Plaintiff cites the following actions in connection with her discrimination claims: termination of employment, failure to promote, failure to accommodate, and unequal terms and conditions of employment. *See id.* Plaintiff also asserts a retaliation claim. *See id.* Plaintiff seeks both injunctive relief and monetary damages against Defendants. *See id.* at 7.

## II.    Standard of Decision

Based upon the pleading allegations, Defendants assert that the Court lacks subject-matter jurisdiction to hear certain of Plaintiff's claims and, therefore, such claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). "A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true." *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009); *see also E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001). As the

5

party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

Defendants also seek dismissal of certain claims for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Pro se filings "are to be construed liberally," but the Court will not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding [her] alleged injury, and [she] must provide such facts if the court is to determine whether [she]

makes out a claim on which relief can be granted." *Id.* Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    III.    *Defendants' Motion to Dismiss*

        *A.  Rule 12(b)(1): Defendants' Eleventh Amendment Immunity to Suit*

Citing the Eleventh Amendment to the U.S. Constitution, Defendants move to dismiss Plaintiff's ADA claims against ODOC and against the individual Defendants in their official capacities for monetary damages. *See* Defs.' Mot. to Dismiss at 4-6.[1] The Court therefore is obligated to address whether Defendants are so immune. *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity "can be waived" but "constitutes a bar to the exercise of federal subject matter jurisdiction" when effectively asserted); *see also White v. United States*, No. CIV-16-1265-D, 2017 WL 4681796, at *2 (W.D. Okla. Oct. 17, 2017).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a

---

[1] The Amended Complaint does not specify whether Plaintiff is suing the individual Defendants in their official and/or individual capacities. Accordingly, "the determination must be made by reviewing the course of the proceedings." *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991) (internal quotation marks omitted). Based upon the pleading's request for prospective injunctive relief, it appears that Plaintiff intended to name the individual Defendants in their official capacities. *See Lewis v. Wyandotte/Leavenworth Area on Aging*, No. 10-CV-2109, 2010 WL 2735563, at *2 (D. Kan. July 9, 2010). And because monetary relief is not available from the individual Defendants in their official capacities, the Court assumes that Plaintiff also intended to sue these Defendants in their individual capacities. *See Gray v. Mills*, No. CIV-24-268-PRW, 2025 WL 665546, at *2 (W.D. Okla. Feb. 28, 2025).

U.S. state.  *See* U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Eleventh Amendment immunity also "'precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'"  *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)).  Here, the relevant state agency is ODOC, both as a named Defendant and because the individual Defendants were employed by that agency during the events giving rise to this lawsuit.  "ODOC is . . . shielded by sovereign immunity because it is an arm of the state."  *Berry v. Oklahoma*, 495 F. App'x 920, 922 (10th Cir. 2012).

There are three exceptions to Eleventh Amendment immunity from suit:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted).  The first exception is plainly not applicable because "Oklahoma has not consented to be sued in federal court."  *Berry*, 495 F. App'x at 921.

8

Citing *United States v. Georgia*, 546 U.S. 151 (2006), Plaintiff argues that her claims should not be barred because sovereign immunity has been abrogated for some ADA claims. *See* Pl.'s Reply at 5. In *Georgia*, the Supreme Court held that Congress, in enacting Title II of the ADA regarding discrimination in public services, "validly abrogates state sovereign immunity" to the extent that "Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *Georgia*, 546 U.S. at 159 (emphasis omitted); *see* 42 U.S.C. §§ 12131-12165; *Ray v. Dep't of Corr.*, No. CIV-14-735-C, 2016 WL 1212773, at *7-10 (W.D. Okla. Mar. 2, 2016) (R. & R.), *adopted*, 2016 WL 1228664 (W.D. Okla. Mar. 28, 2016).

The abrogation of sovereign immunity for Title II claims is not material here, however, because employment discrimination claims such as those raised by Plaintiff are brought "exclusively" pursuant to Title I of the ADA. *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1309-10, 1313 (10th Cir. 2012); *see* 42 U.S.C. §§ 12111-12117. And Congress "did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I." *Garrett*, 531 U.S. at 374 n.9; *see Chacon v. Cmty. Coll. of Denv.*, No. 23-cv-03110, 2024 WL 6475155, at *3-4 (D. Colo. July 16, 2024) (R. & R.), *adopted*, 2024 WL 6475156 (D. Colo. Aug. 8, 2024).

Plaintiff's retaliation claim "fall[s] under Title V of the ADA." *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1167 (10th Cir. 2015); *see* 42 U.S.C. § 12203. Neither the Supreme Court nor the Tenth Circuit has decided whether Congress abrogated Eleventh Amendment immunity for retaliation claims under Title V. *See Levy*, 789 F.3d at 1169. In the absence of controlling authority, the Court finds persuasive the decisions

holding that the Eleventh Amendment precludes retaliation claims made under Title V of the ADA when, as here, "the alleged retaliation is tied to actions based upon [the plaintiff's] employment." *Snyder v. Bd. of Regents for the Agric. & Mech. Colls. ex rel. Okla. State Univ. Ctr. for Health Scis.*, No. CIV-16-384-F, 2020 WL 827412, at *43 (W.D. Okla. Feb. 19, 2020) (citing cases); *see also Coffman v. Kan. Dep't of Corr.*, No. 17-2381, 2018 WL 1566641, at *3 (D. Kan. Mar. 30, 2018) ("[S]uch a claim does not stand alone; it arises because of the alleged discrimination brought under Title I of the ADA.").

Accordingly, Eleventh Amendment immunity bars Plaintiff's claims against ODOC and Plaintiff's claims against Defendants Lothen, Wade, and Hunter in their official capacities for money damages. These claims shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. Rule 12(b)(6): Plaintiff's Failure to State a Claim upon Which Relief Can Be Granted

Remaining for disposition are (1) Plaintiff's claims seeking monetary damages against Defendants Lothen, Wade, and Hunter in their individual capacities and (2) Plaintiff's claims seeking prospective injunctive relief against these Defendants in their official capacities. *See* Am. Compl. at 2-8; *see also Muscogee (Creek) Nation*, 609 F.3d at 1166. Defendants seek dismissal of these claims under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss at 6-12.

### 1. Plaintiff's Claims Against Defendant Hunter

The Amended Complaint identifies Defendant Hunter as a supervisor in the Office of the Inspector General. *See* Am. Compl. at 2. Although Plaintiff alleges that she

discussed the November 12, 2023 incident during a meeting with "an OIG investigator," the pleading does not identify Defendant Hunter as this investigator or otherwise refer to him anywhere in its factual allegations. *Id.* at 6.

Because the Amended Complaint does not allege facts showing that Defendant Hunter engaged in any discriminatory or retaliatory conduct toward Plaintiff, the pleading fails "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff's allegations do not permit Defendant Hunter "sufficient notice to begin preparing [his] defense" or plausibly "state a claim upon which relief can be granted." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (citing Fed. R. Civ. P. 8); Fed. R. Civ. P. 12(b)(6). Therefore, Plaintiff's remaining claims against Defendant Hunter shall be dismissed.

### 2. Plaintiff's Claims Against Defendants Lothen and Wade

#### a. Individual-Capacity Claims for Money Damages

Defendants Lothen and Wade argue that Plaintiff's claims against them in their individual capacities should be dismissed because the Amended Complaint does not allege that these Defendants are "employers" for purposes of the ADA and "the ADA precludes personal capacity liability against individuals who do not otherwise qualify as employers under the statutory definition." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *see* Defs.' Mot. to Dismiss at 6. Plaintiff does not address this argument.

The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees," as well as "any agent of such person." 42 U.S.C. § 12111(5)(A). The Amended Complaint does not allege facts suggesting, much

11

less plausibly establishing, that either Defendant Lothen or Defendant Wade qualifies as an "employer" under the ADA.  Therefore, Plaintiff's ADA claims against Defendant Lothen and Defendant Wade in their individual capacities shall be dismissed.

### b.    Official-Capacity Claims for Prospective Equitable Relief

As referenced above, Plaintiff's remaining claims against Defendants Lothen and Wade in their official capacities may proceed pursuant to *Ex parte Young* because they "allege[] an ongoing violation of federal law" and "seek[] prospective relief" "against state officials."  *Muscogee (Creek) Nation*, 669 F.3d at 1166-67; *see also Garrett*, 531 U.S. at 374 n.9.  As prospective relief, Plaintiff seeks removal of the use-of-force incident from her employment record, reinstatement to her job, and "to be able to be promoted to Correction Case Manager II."  Am. Compl. at 7.

### i.    Failure to Promote

To establish a prima facie case of disability discrimination based on a failure to promote, Plaintiff must show:

> (1) [she] has a "disability" within the meaning of the [ADA]; (2) [she] was qualified, with or without reasonable accommodation, to perform the essential job functions of the position [she] sought; and (3) [her] employer refused the promotion under circumstances which give rise to an inference the decision was based on [her] disability.

*Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002).[2]  Defendants Lothen and Wade argue that Plaintiff fails to allege the third of these elements—i.e., that Plaintiff was refused a promotion due to a disability.  *See* Defs.' Mot. to Dismiss at 10.

---

[2] The Tenth Circuit has explained that, "[w]hile the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint, the elements of each alleged

12

Plaintiff alleges that she was disabled as a result of being injured in October of 2022. She acknowledges that, in August of 2023, she was promoted to Correctional Case Manager I. *See* Am. Compl. at 4, 5. Beyond that, Plaintiff does not allege that another vacant position became available or that she sought, applied for, was qualified for, or was denied a promotion. Plaintiff therefore fails to state a failure-to-promote claim upon which relief can be granted.

### ii.    Failure to Accommodate

Defendants Lothen and Wade next argue that Plaintiff's pleading does not include sufficient "allegations regarding a lack of accommodation" to state a claim based upon a failure to accommodate under the ADA. Defs.' Mot. to Dismiss at 12.

To establish a prima facie failure-to-accommodate claim, Plaintiff must show that: "(1) [she] was disabled; (2) [she] was otherwise qualified; (3) [she] requested a plausibly reasonable accommodation; and (4) Defendant[s] refused to accommodate [her] disability." *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022). "[A]n adverse employment action is not a requisite element of an ADA failure-to-accommodate claim." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 788 (10th Cir. 2020).

Liberally construed, Plaintiff alleges that, based on an October 4, 2022 injury, Plaintiff had been granted a "work restriction accommodation[]" by the LCC warden recognizing that she was "not allowed to lift, push or pull anything" in excess of five pounds. Am. Compl. at 4. Plaintiff further alleges that she informed her supervisors of the

---

cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

13

restrictions and her willingness to otherwise complete her duties each time she was transferred to a new supervisor or work area. *See id.* at 4, 5. Plaintiff's allegations plausibly reflect that multiple supervisors responded by telling Plaintiff that she would have to fulfill her duties with or without accommodation. *See, e.g., id.* at 4 ("[Ms. Bradley] stated that since I was the only person at the front desk, I would have to do whatever needed to be done."). Plaintiff alleges that she "reported several times to HR and the Warden[']s office about having to move/lift items above [her] weight restrictions." *Id.* at 5.

Accepting these facts as true and viewing them in the light most favorable to Plaintiff, these allegations are sufficient to plausibly state a claim under the ADA for failure to accommodate. *See Dansie*, 42 F.4th at 1192 ("Meeting [the] test [to establish a prima facie failure-to-accommodate claim] is not onerous." (internal quotation marks omitted)); *see also Khalik*, 671 F.3d at 1192.

### iii.    Retaliation

To establish a prima facie claim for retaliation in violation of the ADA, Plaintiff must show:

> (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action.

*Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1225 (10th Cir. 2016) (internal quotation marks omitted). Defendants Lothen and Wade challenge the second and third of these elements, arguing that Plaintiff's July 2024 termination occurred too long after the alleged protected action—Plaintiff reporting a threat following the November 2023

14

incident—to permit an inference of a retaliatory motive. *See* Defs.' Mot. to Dismiss at 10-11.

The second element is satisfied if a plaintiff alleges the employer's action was "materially adverse," "meaning that it causes 'significant' harm" and is "serious enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Muldrow v. City of St. Louis*, 601 U.S. 346, 367 (2024) (alteration omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Causation, the third element, is established "by adducing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Winston v. Ross*, 725 F. App's 659, 664 (10th Cir. 2018) (internal quotation marks omitted). The Tenth Circuit has held that, absent additional circumstances, "protected activity is not entitled to a presumption of causation when four months have elapsed between the [protected activity] and the alleged retaliation." *Id.* at 665; *see Convoy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013).

Plaintiff alleges that her duties "began to change" after she informed human resources of her supervisor Jesse Smith's comment that he would get her "terminated for getting injured." Am. Compl. at 5. Plaintiff alleges that she was assigned to the "laundry area" "more than any other case manager," and that she was transferred to another unit about four months later. *Id.* She also alleges that she was made aware of an internal

15

investigation into the November 12, 2023 incident two days after her transfer to the new unit. *Id.* at 6.[3]

Taken together, these facts are sufficient to state a claim for retaliation. Although some of the alleged retaliatory actions, particularly Plaintiff's termination in July 2024, occurred too far after the identified protected conduct (the report of Smith's comment in November 2023) to invoke a presumption of causation based on temporal proximity alone, Plaintiff nevertheless alleges facts that plausibly show that a series of materially adverse acts began soon after the protected conduct and that this series of acts culminated in the investigation that led to Plaintiff's termination. These circumstances plausibly support causation and an inference of discriminatory motive. Thus, this claim shall not be dismissed at this preliminary stage of proceedings.

### iv. Termination

To establish a prima facie case for discriminatory termination under the ADA, Plaintiff must show:

> (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability.

*Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted). Defendants Lothen and Wade argue that Plaintiff has failed to state a claim for termination based upon

---

[3] The Amended Complaint also alleges that Plaintiff's supervisor in the new unit, Mandy Perry, did not specify Plaintiff's new duties and that she was "yelled at" by a coworker, Charles Stephen. Am. Compl. at 5. Plaintiff does not specifically allege that these events were the result of Plaintiff reporting Smith's comment to human resources.

Plaintiff's disability because the Amended Complaint expressly states that Plaintiff "was terminated for the use-in-force incident in which the ODOC found she violated its specific policies."  Defs.' Mot. to Dismiss at 9-10.

The Tenth Circuit has explained that "[i]f a plaintiff offers no direct evidence of discrimination, which is often the case, the court applies the [*McDonnell Douglas*] burden-shifting analysis."  *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).  But the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).  At the motion to dismiss stage a plaintiff need not "establish a prima facie case," as "the ordinary rules for assessing the sufficiency of a complaint apply."  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020); *Swierkiewicz*, 534 U.S. at 511.  The Court, then, must consider whether the plaintiff "ha[s] set forth a plausible claim in light of the elements of [her] claim."  *Frappied*, 966 F.3d at 1050.

In the Amended Complaint, Plaintiff states, "I was terminated for a Use-of-Force." Am. Compl. at 6; *see also id.* Ex. 1, at 1-3.  In the context of the remainder of the Amended Complaint, the Court construes this statement as an acknowledgment by Plaintiff that the stated reason for her termination was her purported improper use of force during the November 2023 incident, rather than an admission that this was the actual reason and that the termination was not motivated by discrimination.  *See* Am. Compl. at 5-6 (Plaintiff alleging that the acting warden informed Plaintiff that he had reviewed video of the November 2023 incident and that Plaintiff had acted according to her training).  Viewed in a light most favorable to Plaintiff, the facts alleged in the Amended Complaint and recited

17

above plausibly establish that Plaintiff's "disability was a determining factor in the employer's [termination] decision." *Morgan*, 108 F.3d at 1323-24. Plaintiff has adequately stated a claim upon which relief can be granted.[4]

CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 15) is GRANTED IN PART and DENIED IN PART. The following claims are DISMISSED without prejudice:

- Plaintiff's ADA claims against Defendant ODOC;

- Plaintiff's ADA claims against Defendant Hunter in his official and individual capacities;

- Plaintiff's ADA claims against the Defendants Lothen and Wade in their official and individual capacities for money damages; and

- Plaintiff's ADA failure to promote claim against Defendants Lothen and Wade in their official capacities for prospective injunctive relief.

Plaintiff's failure to accommodate, retaliation, and termination claims under the ADA against Defendants David Lothen and Andi Wade in their official capacities for prospective injunctive relief shall proceed.

---

[4] On the form used for the Amended Complaint, Plaintiff also checked the box indicating that she seeks to complain of "[u]nequal terms and conditions of [her] employment." Am. Compl. at 3. The Court finds that Plaintiff's notation of unequal terms and conditions is most reasonably construed as an allegation relevant to her discriminatory termination claim, for which Plaintiff will ultimately be required to prove that the relevant defendants "discriminate[d] against" Plaintiff "on the basis of disability in regard to . . . discharge" or "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112; *see also Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1215-16 (10th Cir. 2025) (explaining that, for ADA plaintiffs to prove they have been subject to discrimination because of disability, they must show that "they have suffered an adverse employment action of a disability"—i.e., they must have "experienced some harm respecting an identifiable term or condition of employment" (alteration and internal quotation marks omitted)).

18

19

IT IS SO ORDERED this 30th day of March, 2026.

_Charles B. Goodwin_
CHARLES B. GOODWIN
United States District Judge